BURNHAM, HANNA, MUNGER & CO., a Cor-
poration, H. L. SMITH, THE SYMNS UTAH
GROCER CO., a Corporation, M. J. BRANDEN-
STEIN and A. ADELSDORFER, doing business
under the firm name of M. J. BRANDENSTEIN
& Co., Appellants, v. W. S. McCORNICK, and
THE SALT LAKE EQUITABLE CO-OPERATIVE
INSTITUTION, Respondents.[1]

(Decided October 22, 1898.)

Assignment of Insurance Policies — Preference — Fraud —
Proof Necessary to Establish—Demand Note—Release of
Endorsers.

*Assignment of Insurance Policies — Preference — Fraud — Proof
Necessary to Establish.*

When a corporation assigns certain policies of insurance to
its banker in satisfaction of various items of indebtedness,
and in preference to other creditors, in the absence of statu-
tory restrictions and insolvent laws, unless there is express
proof of fraud, participated in by the assignee, the assignment
will be upheld.

*Demand Note—Release of Endorsers.*

When a demand note of a corporation, endorsed by its presi-
dent, is presented and payment demanded of the principal
and no protest is made, nor any notice of dishonor served on
the endorser, and there is nothing to show that such notice
was ever waived, the endorser is released.

*A. T. Schroeder, Esq.*, for appellant.

---

[1] Mercantile Co. *v.* Mt. Pleasant Co-op. 12 Utah 213; Singer *v.*
Salt Lake City Copper Mfg. Co. 16 Utah ——, Distinguished; Wyeth
Hdw. Co. *v.* James S. B. Co. 15 Utah 110 Followed.

As showing what evidence is sufficient to establish insolvency. *Truckhoe* v. *Baker*, 25 Atl. Rep. 402, 49 N. J. Eq. 581; *Money* v. *Millikemn*, 30 Atl. Rep. 102, 86 Me. 464; *Clark* v. *Mott*, 33 Pac. 884; *In re Ramazzini*, 42 Pac. 970, 110 Cal. 488; *In re Bissel*, 58 N. W. 828, 57 Minn. 78; *Laughlan* v. *Lander*, 26 S. W. 255.

The cash market value of an article having a market value is usually the test of its value *Walley* v. *The Deseret National Bank*, 47 Pac. 152.

Market value is a price established by public sales in the ordinary way of business. *Murray* v. *Statton*, 99 Mass. 348; *Meixell* v. *Kirkpatrick*, 6 Pac. 247; 14 Am. & Eng. Ency. 467.

The corporation was actually insolvent, and the officers are presumed to know its insolvency. *Sutton* v. *Hutchinson*, 63 Fed. 496; *Rowans* v. *Winn*, 12 Am. & Eng. Cor. cases 103; *Sicardo* v. *Keystone*, 24 Atl. 163.

To avoid a voluntary conveyance as against creditors it is not necessary that the debtor should be insolvent, or believe himself to be so at the time of the grant. It is sufficient that his solvency depends upon his success in business in a pending speculation. Woods Prac. Evi. 235–236; *Noble* v. *Mt. Pleasant*, 42 Pac. 873, and cases cited.

*Franklin S. Richards, Esq.*, and *Joseph T. Richards, Esq.*, for respondents.

In the following cases, mortgages and transfers of property made by insolvent corporations to stockholders and directors were sustained upon the ground that the corporation had not abandoned its business, and was endeavoring, although insolvent to continue the purposes of its organization. *Inman & Co.* v. *Sprague*, 47 Pac. 826; *Richwald* v. *Com. Hotel Co.*, 106 Ill. 439, 451, 452;

*Planter's Bank* v. *Whittle*, 78 Vir. 739; *Smith* v. *Skeary*, 47 Conn. 47; *Walsh* v. *Kelley*, 42 Barb. 98; *Scheitlan* v. *Stone*, 43 Barb. 634.

BARTCH, J.:

The plaintiffs, creditors of the defendant Salt Lake Equitable Co-operative Institution, a corporation, brought this action to set aside an assignment of insurance policies, made by that institution to defendant McCornick, a banker, in liquidation of a debt which, the respondents claim it owed McCornick. The court, upon hearing the case, entered judgment of dismissal of the action, and thereupon this appeal was prosecuted.

The appellants appear to maintain that the assignment was illegal and void, because one Langton, the president and manager of the Co-operative Institution, had endorsed one of its notes, which was paid, by the transfer, with another note, in which Langton was interested, to Mc-Cornick, and because, as is claimed, the institution was insolvent when the transfer to McCornick was made. Under this contention, it is insisted that the evidence is insufficient to support the finding of fact which reads as follows:

"That the said assignment was made by defendant, Salt Lake Equitable Co-operative Institution, to the defendant, W. S. McCornick, in payment of an actual *bona fide* indebtedness then existing from said corporation to the said W. S. McCornick in the sum of $10,456.68, and that no part of said assignment was for the use or benefit of William Langton, or any other person except the said W. S. McCornick."

This is a finding that the assignment was made in payment of an actual *bona fide* indebtedness of the corporation to McCornick, and that neither Langton nor any

other person, except McCornick, received any benefit from the assignment. Whether or not this is true must be ascertained from the proof.

It is shown by the evidence that on January 21, 1897, the Co-operative Institution suffered a loss by fire, which was afterwards adjusted at $10,500. The assignment of the insurance policies was made to McCornick on the following day. On the day of the fire the corporation was indebted to him, on an overdraft, for $2,371.84. On the same day he held against it a note for $4,000, on which there was due $3,838.72, and which was endorsed by Langton, and another note of the corporation for $500, on which there was due $374.85. There was also due McCornick, on account of an overdraft the sum of $424.45, for a branch store of the corporation, run in the name of Susanna Preece. The corporation had also been owing the Langton Investment Company, and issued a check to that company on McCornick for $2,845.60, which he received and charged to the account of the Co-operative Institution. The institution also issued a check of $50 in favor of Thomas H. Nott, one of its directors, for services, and as appears, other checks were issued to the amount of $551-.82, all of which were paid by McCornick. Thus on the day of the assignment, the corporation was indebted to McCornick in the sum of $10,456.68, as found by the court. It is true that sum includes $3,871.27, the aggregate amount of checks of the corporation paid by McCornick from January 20, 1897, to and including January 22, 1897, the date of the assignment of the insurance policies, but there appears to be no evidence to show that the payment of these checks was not a fair business transaction. Objection, however, is made to including the item of $424.45, as a part of the indebtedness to McCornick, and it is insisted that the evidence does not show that it

was not the personal debt of Susanna Preece. It does appear from the evidence that the corporation had a branch store at Deseret which was run in the name of Susanna Preece; that the $424.45 was an overdraft for that store; that Langton, the president of the corporation, informed McCornick that that matter belonged to the Co-operative Institution, and drew its check in payment thereof; and that the action of the president was afterwards ratified by the corporation. The item was, therefore, properly included in the total amount of the indebtedness.

It is also insisted that the item of $2,845 was improperly included in the total amount of the indebtedness because, as is maintained, this was the personal debt of Langton. It appears from the evidence that the Langton Investment Co., an unincorporated concern, was indebted to McCornick in that amount; that Langton was the sole person composing that company; that the Co-operative Institution was indebted to the Investment Co., but the exact amount of such indebtedness does not appear, the deposit book showing the account, having been burnt in the fire; that the Co-operative Institution, through its president, gave its check for $2,845, in favor of the Investment Company, which check was paid by McCornick, in the regular course of business and charged to the drawer; and that this transaction was ratified by the Co-operative Institution.

From this evidence, and in the absence of proof showing any fraud on the part of McCornick, we are of the opinion that this item was properly included in the total amount of the indebtedness. The fact that McCornick credited the check to the Investment Company and charged it to the Co-operative Institution, without fraud on his part, did not invalidate his claim. Nor, for like

reasons, do we think the court erred in excluding the item of $374.85, as a part of the total indebtedness paid by the assignment.

The appellants next insist that the assignment was void, because the $4,000 note of the Co-operative Institution to McCornick, on which there was due $3,838.72, had been endorsed by Langton, president, manager and director of the corporation. It appears from the testimony that the note was payable on demand and dated December 11, 1895, and that demand for payment had been made, but no protest made, nor any notice of dishonor served on the endorser. Nor is there any evidence to show that such notice had ever been waived. Respecting this note the witness McCornick, who held it, testified: "I knew that it was not protested, and I know there was no notice of dishonor ever served. I knew of my own knowledge that demand had been made for payment of that note prior to this time." It also appears that extension of time for payment had been granted from time to time, without anything to show that the time was extended because of any agreement of the endorser. Under this and other evidence in the record, we are of the opinion, that the endorser was released before the assignment was made, and at that time was not liable because of his endorsement.

This does not present the case of a director of an insolvent corporation, who, because of his superior knowledge of the corporate affairs, attempts, by deed of assignment or otherwise, to secure some peculiar advantage to himself, to the injury of other creditors, and hence does not come within the principles of the case of *Mercantile Co.* v. *Mt. Pleasant Co-op. Inst'n.*, 12 Utah 213, nor within those of *Singer* v. *Salt Lake City Copper Mfg. Co.*, 53 Pac. Rep. 1024.

The record appears to present a case where a corpora-

tion in embarrassed circumstances, rendered more so because of the fire, without, so far as shown, being actuated by improper motives, has undertaken to pay a *bona fide*, subsisting debt, by an assignment of insurance policies. This it had a right to do, whether solvent or insolvent, so long as it acted in good faith.

In this State, in the absence of statutory restrictions and insolvent laws, an insolvent corporation has the power to prefer creditors, who, are not officers or agents, by deed of assignment or otherwise, so long as its assets have not been taken into possession by a court of equity, in a proper proceeding, at the instance of a proper party. *Wyeth H. & M. Co.* v. *James-Spencer-B. Co.*, 15 Utah 110.

The foregoing considerations render it unnecessary to determine whether or not the Co-operative Institution was insolvent at the time when the assignment was made.

Various errors, respecting the admission of evidence, have been assigned, but, upon careful examination, none of them appear to be well taken.

We discover no reversible error in the record, and are of the opinion that the action was properly dismissed.

The judgment is affirmed, with costs in favor of the respondent.

ZANE, C. J., and MINER, J., concur.